REDACTED

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

_____

|  |  |
|---|---|
| ) |  |
| ) |  |
| In Re: AUTOMOTIVE PARTS ) | 12-md-02311 |
| ANTITRUST LITIGATION ) | Honorable Marianne O. Battani |
| _____ ) |  |
| ) | 2:13-cv-00902-MOB-MKM |
| In re: Windshield Wiper Systems ) |  |
| _____ ) | CONSOLIDATED AMENDED |
| ) | CLASS ACTION COMPLAINT |
| THIS RELATES TO: ) |  |
| ) | JURY TRIAL DEMANDED |
| ALL DEALERSHIP ACTIONS ) |  |
| ) | **[FILED UNDER SEAL-HIGHLY** |
| _____ ) | **CONFIDENTIAL]** |

## DEALERSHIP CONSOLIDATED CLASS COMPLAINT

Landers Auto Group No. 1, Inc., d/b/a Landers Toyota ("Plaintiff Landers"), Hammett

Motor Company, Inc. ("Plaintiff Hammett"), Superstore Automotive, Inc. ("Plaintiff Superstore"),

Lee Pontiac-Oldsmobile-GMC Truck, Inc. ("Plaintiff Lee"), V.I.P. Motor Cars Ltd. ("Plaintiff

V.I.P."), Desert European Motorcars, Ltd. ("Plaintiff Desert"), Dale Martens Nissan Subaru, Inc.

("Plaintiff Dale Martens"), Green Team of Clay Center Inc. ("Plaintiff Green Team"), McGrath

Automotive Group, Inc. ("Plaintiff McGrath"), Table Rock Automotive, Inc., d/b/a Todd Archer

Hyundai ("Plaintiff Table Rock"), Archer-Perdue, Inc., d/b/a/ Archer-Perdue Suzuki ("Plaintiff

Archer-Perdue"), Bonneville and Son, Inc. ("Plaintiff Bonneville"), Holzhauer Auto and Truck

Sales, Inc. ("Plaintiff Holzhauer"), Pitre, Inc., d/b/a/ Pitre Buick GMC ("Plaintiff Pitre"), Patsy

Lou Chevrolet, Inc. ("Plaintiff Patsy Lou"), John Greene Chrysler Dodge Jeep, LLC ("Plaintiff

John Greene"), SLT Group II, Inc., d/b/a Planet Nissan Subaru of Flagstaff ("Plaintiff Planet

Nissan"), Herb Hallman Chevrolet, Inc., d/b/a/ Champion Chevrolet ("Plaintiff Champion"),

REDACTED

Charles Daher's Commonwealth Motors, Inc., d/b/a Commonwealth Chevrolet, Commonwealth

Kia, Commonwealth Honda ("Plaintiff Commonwealth Motors"), Commonwealth Volkswagen,

Inc., d/b/a Commonwealth Volkswagen ("Plaintiff Commonwealth Volkswagen"),

Commonwealth Nissan, Inc., d/b/a Commonwealth Nissan ("Plaintiff Commonwealth Nissan"),

Ramey Motors, Inc. ("Plaintiff Ramey"), Thornhill Superstore, Inc.,  d/b/a Thornhill GM

Superstore ("Plaintiff Thornhill"), Dave Heather Corporation, d/b/a Lakeland Toyota Honda

Mazda Subaru ("Plaintiff Lakeland"), Central Salt Lake Valley GMC Enterprises, LLC, d/b/a Salt

Lake Valley Buick GMC ("Plaintiff Salt Lake Valley"), Capitol Chevrolet Cadillac, Inc. ("Plaintiff

Capitol Chevrolet"), Capitol Dealerships, Inc., d/b/a Capitol Toyota ("Plaintiff Capitol Toyota"),

Beck Motors, Inc. ("Plaintiff Beck"), Stranger Investments d/b/a Stephen Wade Toyota ("Plaintiff

Wade"), John O'Neil Johnson Toyota, LLC ("Plaintiff Johnson"), Hartley Buick GMC Truck, Inc.

("Plaintiff Hartley"), Lee Oldsmobile-Cadillac, Inc. d/b/a Lee Honda ("Plaintiff Lee Honda"), Lee

Auto Malls-Topsham, Inc. d/b/a Lee Toyota of Topsham ("Plaintiff Topsham"), Landers of

Hazelwood, LLC d/b/a Landers Toyota of Hazelwood ("Plaintiff Hazelwood"), Cannon Chevrolet

– Oldsmobile – Cadillac – Nissan, Inc.  ("Plaintiff Cannon"), Cannon Nissan of Jackson, LLC

("Plaintiff Cannon Nissan"), Hudson Charleston Acquisition, LLC d/b/a Hudson Nissan ("Plaintiff

Hudson Nissan"), HC Acquisition, LLC d/b/a Toyota of Bristol ("Plaintiff Bristol"), Shearer

Automotive Enterprises III, Inc. ("Plaintiff Shearer"), Apex Motor Company ("Plaintiff Apex"),

Hudson Gastonia Acquisition, LLC d/b/a Gastonia Nissan ("Plaintiff Gastonia"), Martens Cars of

Washington, Inc. ("Plaintiff Martens"), Scotland Car Yard Enterprises d/b/a San Rafael Mitsubishi

("Plaintiff San Rafael"); Empire Nissan of Santa Rosa, LLC ("Plaintiff Empire Nissan"); Panama

City Automotive Group, Inc. d/b/a John Lee Nissan ("Plaintiff John Lee"); Hodges Imported Cars,

Inc. d/b/a Hodges Subaru ("Plaintiff Hodges"), Reno Dodge Sales, Inc. d/b/a Don Weir's Reno

REDACTED

Dodge ("Plaintiff Don Weir"), and Westfield Dodge City, Inc. ("Plaintiff Westfield") (collectively "Plaintiffs"), file this Class Action Complaint on behalf of themselves and all others similarly situated (the "Classes" as defined below).

Plaintiffs bring this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws and state antitrust, unfair competition, consumer protection, and unjust enrichment laws, demand a trial by jury, and allege as follows:

## NATURE OF ACTION

1.      Plaintiffs bring this lawsuit as a proposed class action against the Defendants DENSO Corporation, DENSO International America, Inc., DENSO International Korea Corporation ("DIKR"), DENSO Korea Automotive Corporation, ASMO Co., Ltd., ASMO North America, LLC, and ASMO Greenville of North Carolina, Inc. (collectively, "DENSO"), Mitsuba Corporation and American Mitsuba Corporation, (together, "Mitsuba"), Robert Bosch GmbH, Bosch Electrical Drives Co., Ltd., Robert Bosch LLC (collectively, "Bosch")[1] (collectively, "Defendants"), and unnamed co-conspirators, manufacturers and/or suppliers of Windshield Wiper Systems (defined below), manufacturers, and suppliers of Windshield Wiper Systems (defined below) globally and in the United States for engaging in a lengthy conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of these products, which were sold to automobile manufacturers in the United States and elsewhere.  The Defendants' conspiracy successfully targeted the United States automotive industry, raising prices for car manufacturer and car and truck dealers.

---

[1] For the purposes of this Complaint, the term "Bosch" or "Defendants" also includes the former Korea Automotive Motor Corporation (Kamco).

REDACTED

2.      "Windshield Wiper Systems" are devices used to remove rain and debris from a vehicle's windshield. Windshield Wiper Systems generally consist of an arm, pivoting at one end and with a long rubber blade attached to the other. The blade is swung back and forth over the glass, pushing water from its surface.  A vehicle[2] has two front Windshield Wiper Systems and sometimes also a back Windshield Wiper.

3.      The "Class Period" refers to January 2000 to the present.

4.      The Defendants manufacture, market, and sell Windshield Wiper Systems throughout the United States and in other countries.

5.      Vehicles containing Windshield Wiper Systems, as well as Windshield Wiper Systems themselves, made by Defendants, are sold in every state of the United States and the District of Columbia.

6.      The Defendants and other co-conspirators (as yet unknown) agreed, combined, and conspired to rig bids for, and to fix, stabilize, and maintain the prices of Windshield Wiper Systems.

7.      Competition authorities in Japan and possibly elsewhere, have been investigating a conspiracy in the market for Windshield Wiper Systems and the Japanese Fair Trade Commission ("JFTC")  has raided the offices of Defendants.  The U.S. Department of Justice's ("DOJ") Antitrust Division is currently conducting a broad criminal investigation into illegal price fixing and bid rigging in the automotive parts industry.   The automotive parts investigation is the largest criminal investigation the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the alleged illegal conduct.  The ongoing cartel investigation of price-fixing and bid-rigging in the automobile parts industry has

---

[2] "Vehicles," "automobiles" or "cars" as used in this Complaint, means any new vehicles bought by automobile dealers throughout the United States, including but not limited to sedans, trucks and sport utility vehicles.

REDACTED

yielded more than $2.4 billion in criminal fines, already surpassing the total amount in criminal

fines obtained by the DOJ's Antitrust Division for all of last fiscal year.

8. On November 22, 2012 the JFTC handed down fines totaling $41.3 million

against various automotive parts manufacturers, including a $13.5 million fine against Defendant

Mitsuba Corporation, for violating antitrust laws by forming a cartel to fix prices for automotive

parts including Windshield Wiper Systems.   On November 22, 2012 the JFTC also announced

cease-and-desist orders against the violating companies, requiring them to (i) immediately pass

resolutions that they would terminate any illegal conduct, (ii) contact any automobile maker who

may have purchased their parts through collusive bidding processes, and (iii) implement

employee compliance programs.  According to the JFTC, fellow conspirator Denso Corp. also

violated antitrust laws.As a direct result of the anti-competitive and unlawful conduct alleged

herein, Plaintiffs and the Class paid artificially inflated prices for Windshield Wiper Systems or

for vehicles containing Windshield Wiper Systems.  Plaintiffs and the members of the Classes

have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

9. Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to

secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman

Act (15 U.S.C. § 1).  Plaintiffs also assert claims for actual and exemplary damages pursuant to

state antitrust, unfair competition, and consumer protection laws, and seek to obtain restitution,

recover damages, and secure other relief against Defendants for violation of those state laws.

Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and

state law.

REDACTED

10.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337.  This Court has subject matter jurisdiction over the state law claims in this action, pursuant to 28 U.S.C. §§ 1332(d), because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of different states than Defendants, who are citizens of foreign states.

11.     This Court also has supplemental jurisdiction of the state law claims asserted herein pursuant to 28 U.S.C. § 1367 because they are so related to the claims asserted in this action over which the Court has original jurisdiction that they form part of the same case or controversy.

12.     Venue is proper in this district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this district, and one or more of the Defendants are doing business in, had agents in, or are found or transact business in this district.

13.     This Court has *in personam* jurisdiction over each of the Defendants because each Defendant, either directly or through the ownership and/or control of its United States subsidiaries, *inter alia:* (a) transacted business in the United States, including in this district; (b) directly or indirectly sold or marketed substantial quantities of Windshield Wiper Systems throughout the United States that were specifically designed for vehicles that were intended to be sold in the United States, including in this district; (c) had substantial aggregate contacts with the

REDACTED

United States as a whole, including in this district; (d) was through its own actions and through the actions of its co-conspirators, engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States; and/or (e) engaged in actions in furtherance of an illegal conspiracy in this district either itself or through its co-conspirators.  Defendants also conduct business throughout the United States, including in this district, and they have purposefully availed themselves of the laws of the United States and this district.

14.     Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial, reasonably foreseeable, and intended anti-competitive effects upon interstate commerce within the United States and upon import trade and commerce into the United States.

15.     The activities of Defendants and their co-conspirators were within the flow of, were intended to have, and did have, a substantial effect on interstate commerce of the United States.  Defendants' products are sold in the flow of interstate commerce.

16.     Windshield Wiper Systems manufactured abroad by Defendants and sold for use in automobiles either manufactured in the United States or manufactured abroad and sold in the United States are goods brought into the United States for sale and, therefore, constitute import commerce.  To the extent any Windshield Wiper Systems are purchased in the United States, and such Windshield Wiper Systems do not constitute import commerce, Defendants' unlawful activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial, and reasonably foreseeable effect on United States commerce.  The anticompetitive conduct, and its effect on United States commerce described

7

REDACTED

herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United States.

17.     By reason of the unlawful activities hereinafter alleged, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes.  Defendants, directly and through their agents, engaged in activities affecting all states, to fix or inflate prices of Windshield Wiper Systems, and that conspiracy unreasonably restrained trade and adversely affected the market for Windshield Wiper Systems.

18.     Defendants' conspiracy and wrongdoing described herein adversely affected automobile dealers in the United States who purchased Windshield Wiper Systems and vehicles, including Plaintiffs and the Classes.

## PARTIES

**Plaintiffs**

19.     Plaintiff Hammett is a Mississippi corporation with its principal place of business in Durant, Mississippi.  Plaintiff Hammett is an authorized Ford dealer who sells Ford-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

20.     During the Class Period Plaintiff Hammett purchased vehicles containing Windshield Wiper Systems manufactured by Defendants or their co-conspirators.  Plaintiff Hammett also purchased Windshield Wiper Systems, manufactured by Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hammett purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Mississippi.  Plaintiff Hammett has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

8

REDACTED

21.     Plaintiff Landers is an Arkansas corporation with its principal place of business in Little Rock, Arkansas.  Plaintiff Landers is an authorized Toyota dealer who sells Toyota-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

22.      During the Class Period Plaintiff Landers purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Landers also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Landers purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Arkansas.  Plaintiff Landers has also displayed, sold, serviced, and advertised its vehicles in Arkansas during the Class Period.

Plaintiff Martens is a Maryland corporation that had its principal place of business in the District of Columbia during the Class Period.  During the Class Period, Plaintiff Martens was an authorized Volvo and Volkswagen dealer who sold Volvo- and Volkswagen-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

23.     During the Class Period, Plaintiff Martens purchased vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.  Plaintiff Martens also purchased Windshield Wiper Systems, manufactured by one or more of the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Martens purchased and received both the afore-mentioned vehicles and

REDACTED

Windshield Wiper Systems in the District of Columbia.  Plaintiff Martens has also displayed, sold, and advertised its vehicles in the District of Columbia during the Class Period.

24.     Plaintiff Superstore is a Minnesota company, with its principal place of business in White Bear Lake, Minnesota.  Plaintiff Superstore is an authorized Buick/GMC dealer, doing business under the name White Bear Lake Superstore.  Plaintiff Superstore sells Buick- and GMC-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

25.     During the Class Period Plaintiff Superstore purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Superstore also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Superstore purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Minnesota.  Plaintiff Superstore has also displayed, sold, serviced, and advertised its vehicles in Minnesota during the Class Period.

26.     Plaintiff Lee is a Florida corporation, with its principal place of business in Fort Walton Beach, Florida.  Plaintiff Lee is presently an authorized GMC dealer.  During the Class Period, Plaintiff Lee was also an authorized Pontiac, Oldsmobile and Jeep dealer.  Plaintiff Lee sells GMC-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.  During the Class Period, Plaintiff sold Pontiac-, Oldsmobile-, and Jeep-brand vehicles containing Windshield Wiper Systems

REDACTED

manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield

Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

27.     During the Class Period Plaintiff Lee purchased vehicles containing Windshield

Wiper Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Lee

also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-

conspirators, for its repair and service business, during the Class Period.  Plaintiff Lee purchased

and received both the afore-mentioned vehicles and Windshield Wiper Systems in Florida.

Plaintiff Lee has also displayed, sold, serviced, and advertised its vehicles in Florida during the

Class Period.

28.     Plaintiff V.I.P. is a California company with its principal place of business in

Palm Springs, California.  Plaintiff VIP is an authorized Mercedes, BMW, Infiniti, and Hyundai

dealer who sells Mercedes-, BMW-, Infiniti-, and Hyundai-brand vehicles containing Windshield

Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well

as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-

conspirators.

29.     During the Class Period Plaintiff V.I.P. purchased vehicles containing Windshield

Wiper Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff

V.I.P. also purchased Windshield Wiper Systems, for its repair and service business, during the

Class Period.  Plaintiff V.I.P. purchased and received both the afore-mentioned vehicles and

Windshield Wiper Systems in California.  Plaintiff V.I.P. has also displayed, sold, serviced, and

advertised its vehicles in California during the Class Period.

30.     Plaintiff Desert is a California company, with its principal place of business in

Rancho Mirage, California.  Plaintiff Desert is an authorized Rolls Royce, Bentley, Aston

REDACTED

Martin, Maserati, Porsche, Jaguar, Land Rover, Audi, Lotus, and Spyker dealer who sells Rolls

Royce-, Bentley-, Aston Martin-, Maserati-, Porsche-, Jaguar-, Land Rover-, Audi-, Lotus-, and

Spyker-brand vehicles containing Windshield Wiper Systems manufactured by one or more of

the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by

one or more of the Defendants or their co-conspirators.

31.     During the Class Period, Plaintiff Desert purchased vehicles containing

Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators.

Plaintiff Desert also purchased Windshield Wiper Systems, manufactured by one or more

Defendants or their co-conspirators, for its repair and service business, during the Class Period.

Plaintiff Desert purchased and received both the afore-mentioned vehicles and Windshield Wiper

Systems in California.  Plaintiff Desert has also displayed, sold, serviced, and advertised its

vehicles in California during the Class Period.

32.     Plaintiff Dale Martens was a Kansas corporation, with its principal place of

business in Lawrence, Kansas during the Class Period.  Plaintiff Dale Martens was an authorized

Nissan and Subaru dealer during the Class Period, who, during the Class Period, sold Nissan-

and Subaru-brand vehicles containing Windshield Wiper Systems manufactured by one or more

of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured

by one or more of the Defendants or their co-conspirators.

33.     During the Class Period Plaintiff Dale Martens purchased vehicles containing

Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators.

Plaintiff Dale Martens also purchased Windshield Wiper Systems, manufactured by one or more

Defendants or their co-conspirators, for its repair and service business, during the Class Period.

Plaintiff Dale Martens purchased and received both the afore-mentioned vehicles and

REDACTED

Windshield Wiper Systems in Kansas. Plaintiff Dale Martens has also displayed, sold, serviced, and advertised its vehicles in Kansas during the Class Period.

34. Plaintiff Green Team is a Kansas corporation, with its principal place of business in Clay Center, Kansas. Plaintiff Green Team is an authorized Chrysler, Jeep, Dodge, and Ram dealer, who sells Chrysler-, Jeep-, Dodge-, and Ram-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

35. During the Class Period Plaintiff Green Team purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Green Team also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Green Team purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Kansas. Plaintiff Green Team has also displayed, sold, serviced, and advertised its vehicles in Kansas during the Class Period.

36. Plaintiff McGrath is a Delaware corporation, with its principal place of business in Cedar Rapids, Iowa. Plaintiff McGrath is an authorized Buick, GMC, Chevrolet, Chrysler, Dodge, Jeep, Ram, Kia, and Cadillac dealer, who sells Buick-, GMC-, Chevrolet-, Chrysler-, Dodge-, Jeep-, Ram-, Kia-, and Cadillac-brand cars containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

37. During the Class Period Plaintiff McGrath purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators.

13

REDACTED

Plaintiff McGrath also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff McGrath purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Iowa.  Plaintiff McGrath has also displayed, sold, serviced, and advertised its vehicles in Iowa during the Class Period.

38.     Plaintiff Table Rock is a Nebraska corporation, with its principal place of business in Bellevue, Nebraska.  Plaintiff Table Rock is an authorized Hyundai dealer, who sells Hyundai-brand cars containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

39.     During the Class Period Plaintiff Table Rock purchased vehicles containing Windshield Wiper Systems manufactured one or more Defendants or their co-conspirators. Plaintiff Table Rock also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Table Rock purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Nebraska.  Plaintiff Table Rock has also displayed, sold, serviced, and advertised its vehicles in Nebraska during the Class Period.

40.     Plaintiff Archer-Perdue is a Nebraska corporation, with its principal place of business in Omaha, Nebraska.  Plaintiff Archer-Perdue is an authorized Suzuki dealer, who, during the Class Period, has sold Suzuki-brand cars containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

REDACTED

41.     During the Class Period Plaintiff Archer-Perdue purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Archer-Perdue also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Archer-Perdue purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Nebraska.  Plaintiff Archer-Perdue has also displayed, sold, serviced, and advertised its vehicles in Nebraska during the Class Period.

42.     Plaintiff Bonneville is a New Hampshire corporation, with its principal place of business in Manchester, New Hampshire.  Plaintiff Bonneville is an authorized Dodge, Chrysler, Jeep, and Ram dealer, who sells Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

43.     During the Class Period Plaintiff Bonneville purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Bonneville also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Bonneville purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in New Hampshire.  Plaintiff Bonneville has also displayed, sold, serviced, and advertised its vehicles in New Hampshire during the Class Period.

44.     Plaintiff Holzhauer is a Delaware corporation, with its principal place of business in Nashville, Illinois.  Plaintiff Holzhauer is an authorized Dodge, Chrysler, and Jeep dealer, who sells Dodge-, Chrysler-, and Jeep-brand vehicles containing Windshield Wiper Systems

REDACTED

manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield

Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

45.     During the Class Period Plaintiff Holzhauer purchased vehicles containing

Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators.

Plaintiff Holzhauer also purchased Windshield Wiper Systems, manufactured by one or more

Defendants or their co-conspirators, for its repair and service business, during the Class Period.

Plaintiff Holzhauer purchased and received both the afore-mentioned vehicles and Windshield

Wiper Systems in Illinois.  Plaintiff Holzhauer has also displayed, sold, serviced, and advertised

its vehicles in Illinois during the Class Period.

46.     Plaintiff Pitre is a New Mexico corporation, with its principal place of business in

Albuquerque, New Mexico.  Plaintiff Pitre is an authorized Buick and GMC dealer, who sells

Buick- and GMC-brand vehicles containing Windshield Wiper Systems manufactured by one or

more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems

manufactured by one or more of the Defendants or their co-conspirators.

47.     During the Class Period Plaintiff Pitre purchased vehicles containing Windshield

Wiper Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Pitre

also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-

conspirators, for its repair and service business, during the Class Period.  Plaintiff Pitre

purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in

New Mexico.  Plaintiff Pitre has also displayed, sold, serviced, and advertised its vehicles in

New Mexico during the Class Period.

48.     Plaintiff Patsy Lou is a Michigan corporation, with its principal place of business

in Flint, Michigan.  Plaintiff Patsy Lou is an authorized Chevrolet dealer, who sells Chevrolet-

16

REDACTED

brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

49.     During the Class Period Plaintiff Patsy Lou purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Patsy Lou also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Patsy Lou purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Michigan.  Plaintiff Patsy Lou has also displayed, sold, serviced, and advertised its vehicles in Michigan during the Class Period.

50.     Plaintiff John Greene is a North Carolina corporation, with its principal place of business in Morganton, North Carolina.  Plaintiff John Greene is an authorized Chrysler, Dodge, Jeep, and Ram dealer, who sells Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

51.     During the Class Period Plaintiff John Greene purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff John Greene also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff John Greene purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in North Carolina.  Plaintiff John Greene has also displayed, sold, serviced, and advertised its vehicles in North Carolina during the Class Period.

REDACTED

52.     Plaintiff Planet Nissan is an Arizona corporation, with its principal place of business in Flagstaff, Arizona.  Plaintiff Planet Nissan is an authorized Nissan and Subaru dealer, who sells Nissan- and Subaru-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

53.     During the Class Period Plaintiff Planet Nissan purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Planet Nissan also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Planet Nissan purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Arizona.  Plaintiff Planet Nissan has also displayed, sold, serviced, and advertised its vehicles in Arizona during the Class Period.

54.     Plaintiff Champion is a Nevada corporation, with its principal place of business in Reno, Nevada.  Plaintiff Champion is an authorized Chevrolet dealer, who sells Chevrolet-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

55.     During the Class Period Plaintiff Champion purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Champion also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Champion purchased and received both the afore-mentioned vehicles and Windshield

REDACTED

Wiper Systems in Nevada.  Plaintiff Champion has also displayed, sold, serviced, and advertised its vehicles in Nevada during the Class Period.

56.     Plaintiff Commonwealth Motors is a Delaware corporation, with its principal place of business in Lawrence, Massachusetts.  Plaintiff Commonwealth Motors is an authorized Chevrolet, Honda, and Kia dealer, who sells Chevrolet-, Honda-, and Kia-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

57.     During the Class Period Plaintiff Commonwealth Motors purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Commonwealth Motors also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Commonwealth Motors purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Massachusetts.  Plaintiff Commonwealth Motors has also displayed, sold, serviced, and advertised its vehicles in Massachusetts during the Class Period.

58.     Plaintiff Commonwealth Nissan is a Massachusetts corporation with its principal place of business in the Lawrence, Massachusetts.  Plaintiff Commonwealth Nissan is an authorized Nissan dealer, who sells Nissan-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

59.     During the Class Period Plaintiff Commonwealth Nissan purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-

REDACTED

conspirators. Plaintiff Commonwealth Nissan also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Commonwealth Nissan purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Massachusetts. Plaintiff Commonwealth Nissan has also displayed, sold, serviced, and advertised its vehicles in Massachusetts during the Class Period.

60.     Plaintiff Commonwealth Volkswagen is a Massachusetts corporation with its principal place of business in Lawrence, Massachusetts. Plaintiff Commonwealth Volkswagen is an authorized Volkswagen dealer, who sells Volkswagen-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

61.     During the Class Period Plaintiff Commonwealth Volkswagen purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Commonwealth Volkswagen also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Commonwealth Volkswagen purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Massachusetts. Plaintiff Commonwealth Volkswagen has also displayed, sold, serviced and advertised its vehicles in Massachusetts during the Class Period.

62.     Plaintiff Ramey is a West Virginia company with its principal place of business in Princeton, West Virginia. Plaintiff Ramey is an authorized Toyota, Chrysler, Dodge, Jeep, and Ram dealer, who sells Toyota-, Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing

REDACTED

Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

63.     During the Class Period Plaintiff Ramey purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Ramey also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Ramey purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in West Virginia. Plaintiff Ramey has also displayed, sold, serviced, and advertised its vehicles in West Virginia during the Class Period.

64.     Plaintiff Thornhill is a West Virginia corporation, with its principal place of business in Chapmanville, West Virginia. Plaintiff Thornhill is an authorized Chevrolet, Buick, and GMC dealer, who sells Chevrolet-, Buick-, and GMC-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

65.     During the Class Period Plaintiff Thornhill purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Thornhill also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Thornhill purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in West Virginia. Plaintiff Thornhill has also displayed, sold, serviced, and advertised its vehicles in West Virginia during the Class Period.

REDACTED

66.     Plaintiff Lakeland is a Wisconsin corporation with its principal place of business in Sheboygan, Wisconsin.  Plaintiff Lakeland is an authorized Toyota, Honda, Mazda, and Subaru dealer who sells Toyota- Honda-, Mazda-, and Subaru-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

67.      During the Class Period Plaintiff Lakeland purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Lakeland also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Lakeland purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Wisconsin.  Plaintiff Lakeland has also displayed, sold, serviced, and advertised its vehicles in Wisconsin during the Class Period.

68.     Plaintiff Salt Lake Valley is a Utah company, with its principal place of business in Salt Lake City, Utah.  Plaintiff Salt Lake Valley is an authorized Buick and GMC dealer, who sells Buick- and GMC-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

69.     During the Class Period Plaintiff Salt Lake Valley purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Salt Lake Valley also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Salt Lake Valley purchased and received both the afore-mentioned vehicles and

REDACTED

Windshield Wiper Systems in Utah.  Plaintiff Salt Lake Valley has also displayed, sold, serviced, and advertised its vehicles in Utah during the Class Period.

70.     Plaintiff Capitol Chevrolet is an Oregon corporation, with its principal place of business in Salem, Oregon.  Plaintiff Capitol Chevrolet is an authorized Chevrolet, Cadillac, and Subaru dealer, who sells Chevrolet-, Cadillac-, and Subaru-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

71.     During the Class Period Plaintiff Capitol Chevrolet purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Capitol Chevrolet also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Capitol Chevrolet purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Oregon.  Plaintiff Capitol Chevrolet has also displayed, sold, serviced, and advertised its vehicles in Oregon during the Class Period.

72.     Plaintiff Capitol Toyota is an Oregon corporation with its principal place of business in Salem, Oregon.  Plaintiff Capitol Toyota is an authorized Toyota dealer, who sells Toyota-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

73.     During the Class Period Plaintiff Capitol Toyota purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Capitol Toyota also purchased Windshield Wiper Systems, manufactured by one or

REDACTED

more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Capitol Toyota purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Oregon.  Plaintiff Capitol Toyota has also displayed, sold, serviced, and advertised its vehicles in Oregon during the Class Period.

74.     Plaintiff Beck is a South Dakota corporation, with its principal place of business in Pierre, South Dakota.  Plaintiff Beck is an authorized Chevrolet and Cadillac dealer, who sells Chevrolet- and Cadillac-brand vehicles containing Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by one or more of the Defendants or their co-conspirators.

75.     During the Class Period Plaintiff Beck purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Beck also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Beck purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in South Dakota.  Plaintiff Beck has also displayed, sold, serviced, and advertised its vehicles in South Dakota during the Class Period.

76.     Plaintiff Wade is a Utah corporation, with its principal place of business in St. George, Utah.  Plaintiff Wade is an authorized Toyota dealer, who sells Toyota-brand cars containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.

77.     During the Class Period Plaintiff Wade purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Wade also purchased Windshield Wiper Systems, manufactured by one or more Defendants or

REDACTED

their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Wade purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Utah. Plaintiff Wade has also displayed, sold, serviced, and advertised its vehicles in Utah during the Class Period.

78.     Plaintiff Johnson is a Mississippi limited liability company, with its principal place of business in Meridian, Mississippi. Plaintiff Johnson is an authorized Toyota dealer, who sells Toyota-brand cars containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.

79.     During the Class Period Plaintiff Johnson purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Johnson also purchased Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Johnson purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Mississippi. Plaintiff Johnson has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

80.     Plaintiff Hartley is a New York corporation, with its principal place of business in Jamestown, New York. During the Class Period, Plaintiff Hartley has been an authorized Honda, Buick, Pontiac, and GM dealer, who sold Honda-, Buick-, Pontiac-, and GM-brand cars containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.

81.     During the Class Period Plaintiff Hartley purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators.

REDACTED

Plaintiff Hartley also purchased Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Hartley purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in New York.  Plaintiff Hartley has also displayed, sold, serviced, and advertised its vehicles in New York during the Class Period.

82.     Plaintiff Lee Honda is a Maine corporation, with its principal place of business in Auburn, Maine.  Plaintiff Lee Honda is an authorized Honda dealer, who sells Honda-brand cars containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.

83.     During the Class Period Plaintiff Lee Honda purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Lee Honda also purchased Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Lee Honda purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Maine.  Plaintiff Lee Honda has also displayed, sold, serviced, and advertised its vehicles in Maine during the Class Period.

84.     Plaintiff Topsham is a Maine corporation, with its principal place of business in Topsham, Maine.  Plaintiff Topsham is an authorized Toyota dealer, who sells Toyota-brand cars containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.

85.     During the Class Period Plaintiff Topsham purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Topsham also purchased Windshield Wiper Systems manufactured by one or more

REDACTED

Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Topsham purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Maine. Plaintiff Topsham has also displayed, sold, serviced, and advertised its vehicles in Maine during the Class Period.

86.     Plaintiff Hazelwood is an Arkansas corporation, with its principal place of business in Hazelwood, Missouri. Plaintiff Hazelwood is an authorized Toyota dealer, who sells Toyota-brand cars containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.

87.     During the Class Period Plaintiff Hazelwood purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Hazelwood also purchased Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Hazelwood purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Arkansas. Plaintiff Hazelwood has also displayed, sold, serviced, and advertised its vehicles in Arkansas during the Class Period.

88.     Plaintiff Cannon is a Mississippi corporation, with its principal place of business in Greenwood, Mississippi. Plaintiff Cannon is an authorized Chevrolet and Cadillac dealer, who sells Chevrolet- and Cadillac-brand cars containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.

89.     During the Class Period Plaintiff Cannon purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators.

REDACTED

Plaintiff Cannon also purchased Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Cannon purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Mississippi.  Plaintiff Cannon has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

90.     Plaintiff Cannon Nissan is a Mississippi limited liability company with its principal place of business in Jackson, Mississippi.  Plaintiff Cannon is an authorized Nissan dealer, who sells Nissan-brand cars containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.

91.     During the Class Period Plaintiff Cannon Nissan purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Cannon Nissan also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Cannon purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Mississippi.  Plaintiff Cannon has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

92.     Plaintiff Hudson Nissan is a South Carolina limited liability company with its principal place of business in North Charleston, South Carolina.  Plaintiff Hudson Nissan is an authorized Nissan dealer, who sells Nissan-brand cars containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.

REDACTED

93.     During the Class Period Plaintiff Hudson Nissan purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Hudson Nissan also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hudson Nissan purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in South Carolina.  Plaintiff Hudson Nissan has also displayed, sold, serviced, and advertised its vehicles in South Carolina during the Class Period.

94.     Plaintiff Bristol is a Tennessee limited liability company with its principal place of business in Bristol, Tennessee.  Plaintiff Bristol is an authorized Toyota dealer, who sells Toyota- brand cars containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.

95.     During the Class Period Plaintiff Bristol purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Bristol also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Bristol purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Tennessee.  Plaintiff Bristol has also displayed, sold, serviced, and advertised its vehicles in Tennessee during the Class Period.

96.     Plaintiff Shearer is a Vermont Corporation with its principal place of business in Rutland, Vermont.  Plaintiff Shearer is an authorized Honda dealer, who sells Honda-brand cars containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.

REDACTED

97.     During the Class Period Plaintiff Shearer purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Shearer also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Shearer purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Vermont.  Plaintiff Shearer has also displayed, sold, serviced, and advertised its vehicles in Vermont during the Class Period.

98.     Plaintiff Apex is a Vermont Corporation with its principal place of business in South Burlington, Vermont.  Plaintiff Apex is an authorized Acura dealer, who sells Acura-brand cars containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.

99.     During the Class Period Plaintiff Apex purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Apex also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Apex purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Vermont.  Plaintiff Apex has also displayed, sold, serviced, and advertised its vehicles in Vermont during the Class Period.

100.     Plaintiff Gastonia is a North Carolina limited liability company with its principal place of business in Gastonia, North Carolina.  Plaintiff Gastonia is an authorized Nissan dealer, who sells Nissan-brand cars containing Windshield Wiper Systems manufactured by the

REDACTED

Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.

101.    During the Class Period Plaintiff Gastonia purchased vehicles containing Windshield Wiper Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Gastonia also purchased Windshield Wiper Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Gastonia purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in North Carolina.  Plaintiff Gastonia has also displayed, sold, serviced, and advertised its vehicles in North Carolina during the Class Period.

102.    Plaintiff San Rafael is a California corporation with its principal place of business in San Rafael, California.  Plaintiff San Rafael is an authorized Mitsubishi dealer that purchased Mitsubishi-brand cars containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators during the Class Period.

103.    During the Class Period Plaintiff San Rafael purchased vehicles containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.  Plaintiff San Rafael also purchased Windshield Wiper Systems, manufactured by the Defendants or their co-conspirators. Plaintiff San Rafael purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in California.  Plaintiff San Rafael has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

104.    Plaintiff Empire Nissan is a California limited liability company with its principal place of business in Santa Rosa, California.  Plaintiff Empire Nissan is an authorized Nissan dealer that purchased Nissan-brand cars containing Windshield Wiper Systems manufactured by

REDACTED

the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators during the Class Period.

105.    During the Class Period Plaintiff Empire Nissan purchased vehicles containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.  Plaintiff Empire Nissan also purchased Windshield Wiper Systems, manufactured by the Defendants or their co-conspirators. Plaintiff Empire Nissan purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in California.  Plaintiff Empire Nissan has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

106.    Plaintiff John Lee is a Florida corporation with its principal place of business in Panama City, Florida.  Plaintiff John Lee is an authorized Nissan dealer that purchased Nissan-brand cars containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators, as well as Windshield Wiper Systems manufactured by the Defendants or their co-conspirators during the Class Period.

107.    During the Class Period Plaintiff John Lee purchased vehicles containing Windshield Wiper Systems manufactured by the Defendants or their co-conspirators.  Plaintiff John Lee also purchased Windshield Wiper Systems, manufactured by the Defendants or their co-conspirators. Plaintiff John Lee purchased and received both the afore-mentioned vehicles and Windshield Wiper Systems in Florida.  Plaintiff John Lee has also displayed, sold, serviced, and advertised its vehicles in Florida during the Class Period.

**Defendants**

108.    Defendant DENSO Corporation is a Japanese corporation with its principal place of business in Kariya, Japan.  Defendant DENSO Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold

REDACTED

Windshield Wiper Systems that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Windshield Wiper Systems to Plaintiffs and class members.

109.   Defendant DENSO International America, Inc. is a Delaware corporation with its principal place of business in Southfield, Michigan.  It is a subsidiary of and wholly owned and/or controlled by its parent, DENSO Corporation.  DENSO International America, Inc. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Windshield Wiper Systems that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Windshield Wiper Systems to Plaintiffs and class members.  At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales and finances.  According to DENSO's website, DENSO International America, Inc. is "DENSO's North American regional headquarters and parent company for its North American operations, original equipment (OE) sales, product engineering and technical support to OE sales and finance."

110.   DENSO International Korea Corporation is a Korean corporation with its principal place in Uiwang-si, South Korea.  It is a subsidiary of and wholly owned and/or controlled by its parent, DENSO Corporation.  DENSO International Korea Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Windshield Wiper Systems that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Windshield Wiper Systems to Plaintiffs and class members. At all times during the Class Period,

REDACTED

its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales and finances.

111.    DENSO Korea Automotive Corporation is a Korean corporation with its principal place in Changwon, South Korea.  It is a subsidiary of and wholly owned and/or controlled by its parent, DENSO Corporation.  Denso Korea Automotive Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Windshield Wiper Systems that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Windshield Wiper Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales and finances.

112.    Defendant ASMO Co., Ltd. is a Japanese corporation with its principal place of business in Shizuoka, Japan.  It is a subsidiary of and wholly owned and/or controlled by its parent, DENSO Corporation.  ASMO Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Windshield Wiper Systems that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Windshield Wiper Systems to Plaintiffs and class members.  At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales and finances.

113.    Defendant ASMO North America, LLC is a Delaware corporation with its principal place of business in Statesville, North Carolina.  It is a subsidiary of and wholly owned and/or controlled by its parent, DENSO Corporation.  ASMO North America, LLC – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured,

REDACTED

marketed, and/or sold Windshield Wiper Systems that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Windshield Wiper Systems to Plaintiffs and class members.  At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales and finances.  According to DENSO's website, ASMO North America, LLC is the "[r]egional headquarters for ASMO affiliates in North America" and "coordinates the business activities of all affiliates in North America."

114.    Defendant ASMO Greenville of North Carolina, Inc. is a North Carolina company with its principal place of business in Greenville, North Carolina.  It is a subsidiary of and wholly owned and/or controlled by its parent, DENSO Corporation.  ASMO Greenville of North Carolina, Inc. manufactured, marketed, and/or sold Windshield Wiper Systems that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Windshield Wiper Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales and finances.

115.    Defendant Mitsuba Corporation is a Japanese corporation with its principal place of business in Gunma, Japan.  Mitsuba —directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed and/or sold Windshield Wiper Systems that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Windshield Wiper Systems to Plaintiffs and class members.

116.    Defendant American Mitsuba Corporation is an Illinois corporation with its principal place of business in Novi, Michigan.  It is a subsidiary of and wholly owned and/or controlled by its parent, Mitsuba Corporation.  American Mitsuba Corporation manufactured,

REDACTED

marketed and/or sold Windshield Wiper Systems that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Windshield Wiper Systems to Plaintiffs and class members.  At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales and finances.

117.   Defendant Robert Bosch GmbH is a German company with its headquarters in Stuttgart, Germany.  Robert Bosch GmbH – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Windshield Wiper Systems that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Windshield Wiper Systems to Plaintiffs and class members.

118.   Defendant Bosch Electrical Drives Co., Ltd. (f/k/a Korea Automotive Motor Corporation) is a Korean company with its principal place of business in Sejong, South Korea.  It is a subsidiary of and wholly owned by Robert Bosch GmbH.  Bosch Electrical Drives Co., Ltd. – directly and/or through its affiliates, which it wholly controlled – manufactured, marketed and/or sold Windshield Wiper Systems that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Windshield Wiper Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Germany parent, which controlled its policies, sales and finances.

119.   Defendant Robert Bosch LLC is a Delaware company with its principal place of business in Plymouth, Michigan.  It is an affiliate of and wholly controlled by Bosch Electrical Drives Co., Ltd.  Robert Bosch LLC – directly and/or through its subsidiaries, which it wholly

REDACTED

owned and/or controlled – manufactured, marketed and/or sold Windshield Wiper Systems that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such Windshield Wiper Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Germany parent, which controlled its policies, sales and finances.

## AGENTS AND CO-CONSPIRATORS

120. Each Defendant acted as the principal of or agent for the other Defendant with respect to the acts, violations, and common course of conduct alleged.

121. Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as Defendants in this lawsuit, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anti-competitive conduct.

122. Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

## FACTUAL ALLEGATIONS

111. Windshield Wiper Systems are devices used to remove rain and debris from a vehicle's windshield. Windshield Wiper Systems generally consist of an arm, pivoting at one end and with a long rubber blade attached to the other. The blade is swung back and forth over the glass, pushing water from its surface.

REDACTED



Figure 1.



REDACTED

Figure 2.

112.    Windshield Wiper Systems are installed by automobile original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process.  They are also installed in cars to replace worn out, defective or damaged Windshield Wiper Systems.

113.    When purchasing Windshield Wiper Systems, OEMs issue Requests for Quotation ("RFQs") to automotive parts suppliers-Windshield Wiper Systems  are not commodity items.  Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs and the OEMs usually award the business to the selected automotive parts supplier for four to six years.  Typically, the bidding process begins approximately three years prior to the start of production of a new model.  Japanese OEMs procure parts for U.S. manufactured vehicles both in Japan and the United States.

114.    Suppliers, including Defendants, supply OEMs with both Windshield Wiper Systems to be installed in vehicles and Windshield Wiper Systems to be used for replacement purposes.

115.    The Defendants and their co-conspirators supplied Windshield Wiper Systems to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere.  The Defendants and their co-conspirators manufactured Windshield Wiper Systems (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) in Japan for export to the United States and installation in vehicles manufactured and sold in the United States, and (c) in Japan for installation in vehicles manufactured in Japan for export to and sale in the United States.

116.    Plaintiffs and members of the proposed Classes purchased Windshield Wiper Systems indirectly from one or more of the Defendants and their co-conspirators.  By way of

REDACTED

example, automobile dealers indirectly purchase Windshield Wiper Systems from the

Defendants or their co-conspirators when they purchase new vehicles to sell or lease to

consumers.  Likewise, when repairing a damaged vehicle or where the vehicle's Windshield

Wiper Systems are defective, Plaintiffs and other automobile dealers indirectly purchase

replacement Windshield Wiper Systems from Defendants.

117.    Replacement Windshield Wiper Systems sold by OEMs to dealerships are the

same as the Windshield Wiper Systems installed in vehicles and are made by the same

manufacturer who made the Windshield Wiper Systems originally installed.  Such replacement

parts are not the same as aftermarket parts, which are made by different manufacturers than those

who manufactured the original parts.  The prices of replacement Windshield Wiper Systems

were inflated by Defendants' collusion, either as a direct effect of their conspiracy, or through

umbrella effects.

118.    In 2011, the U.S. OEM market for windshield wiper systems was $541.67

million.

**A.    The Structure and Characteristics of the Windshield Wiper Systems Market Render            the Conspiracy More Plausible.**

119.    The structure and other characteristics of the Windshield Wiper Systems market

in the United States are conducive to a price-fixing agreement, and have made collusion

particularly attractive in this market.  Specifically, the Windshield Wiper Systems market: (1)

has high barriers to entry; (2) has inelasticity of demand; and (3) is highly concentrated.

**1.    The Windshield Wiper Systems Market Has High Barriers to Entry.**

120.    A collusive arrangement that raises product prices above competitive levels

would, under basic economic principles, attract new entrants seeking to benefit from the supra-

REDACTED

competitive pricing.  Where, however, there are significant barriers to entry, new entrants are less likely.  Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

121.    There are substantial barriers that preclude, reduce, or make more difficult entry into the Windshield Wiper Systems market.  A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long-standing customer relationships.

122.    Defendants also own several patents for Windshield Wiper Systems.  These patents place a significant and costly burden on potential new entrants, who must avoid infringing on the patents when entering the market with a new product.

### 2.    There is Inelasticity of Demand for Windshield Wiper Systems.

123.    "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other.  For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any.  In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

124.    For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices.  Otherwise, increased prices would result in declining sales, revenues and profits, as customers purchased substitute products or declined to buy altogether.  Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

REDACTED

125.    Demand for Windshield Wiper Systems is highly inelastic because there are no close substitutes for these products.  In addition, customers must purchase Windshield Wiper Systems as an essential part of a vehicle, even if the prices are kept at a supra-competitive level.

### 3.    The Windshield Wiper Systems Market is Highly Concentrated.

126.    A highly concentrated market is more susceptible to collusion and other anticompetitive practices.   There is a high level of concentration among firms in the Windshield Wiper Systems market.  According to a leading industry report, the top three suppliers of Windshield Wiper Systems control approximately 70 percent of the North American market in 2010.

### B.    Government Investigations.

127.    A globally coordinated antitrust investigation is taking place in the United States, Europe, and Japan, aimed at suppliers of automotive parts in general, and Windshield Wiper Systems in particular.

128.    The DOJ Antitrust Division's broad criminal investigation into illegal price fixing and bid rigging in the automotive parts industry is the largest criminal investigation the Antitrust Division has ever pursued.  The ongoing cartel investigation of price-fixing and bid-rigging in the automobile parts industry has yielded more than $790 million in criminal fines, already surpassing the total amount in criminal fines obtained by the DOJ's Antitrust Division for all of last fiscal year.

129.    In July 2011, the JFTC began investigating various automotive parts manufacturers probing allegations that these manufacturers were allocating contracts to each other and to avoid competing for supply contracts with OEMs.  The probe found that some of the automotive parts manufacturers had split into varying groups for the differing purchasers and the

REDACTED

different parts, including Windshield Wiper Systems.  The investigation also found that Defendants restrained competition by designating certain Defendants to win bids on particular automotive parts, including Windshield Wiper Systems and concluded that Defendants' scheme was successful because the designated Defendants won bids that Defendants had intended them to win.

130.    The JFTC raided offices of Defendants as part of the spreading investigation into suspected price fixing on automotive parts.  The companies raided include Denso which is affiliated with Toyota Motor Corp, and Mitsuba.  According to its 2011 Annual Report, Denso was investigated on July 20, 2011 at various locations, including in Kariya, Aichi and some other sales branches in Japan.

131.    On November 22, 2012 the JFTC handed down fines totaling $41.3 million against various automotive parts manufacturers, including a $13.5 million fine against Mitsuba for violating antitrust laws by forming a cartel to fix prices for automotive parts including Windshield Wiper Systems.  On November 22, 2012 the JFTC also announced cease-and-desist orders against the violating companies, requiring them to (i) immediately pass resolutions that they would terminate any illegal conduct, (ii) contact any automobile maker who may have purchased their parts through collusive bidding processes, and (iii) implement employee compliance programs.  According to the JFTC, fellow conspirator Denso also violated antitrust laws.

132.    The companies rigged the bidding process for supply contracts with automobile makers for automotive parts, including Windshield Wiper Systems, by pre-ordaining the winners and losers.  The JFTC explained that these companies "substantially restrained competition in the fields of each product ordered by each automobile company, by designating successful bidders."

43

REDACTED

133.     Additionally, Denso has already pleaded guilty and agreed to pay a total of $78 million in criminal fines in the United States with respect to a two-count criminal information charging it with fixing the prices of two related automotive parts as follows:  (1) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of electronic control units sold to an automobile manufacturer in the United States and elsewhere from at least as early as June 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1; (2) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of heater control panels sold to an automobile manufacturer in the United States and elsewhere from at least as early as June 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

134.     According to the criminal Information filed against it, Defendant DENSO Corporation and its co-conspirators carried out the ECU conspiracy by:

(a)     participating in meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations to be submitted to an automobile manufacturer in the United States and elsewhere;

(b)     agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to an automobile manufacturer in the United States and elsewhere;

REDACTED

(c)      agreeing, during those meetings, conversations, and communications, to allocate the supply of ECUs sold to an automobile manufacturer in the United States and elsewhere on a model-by-model basis;

(d)      agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by an automobile manufacturer in the United States and elsewhere;

(e)      submitting bids, price quotations, and price adjustments to an automobile manufacturer in the United States and elsewhere in accordance with the agreements reached;

(f)      selling ECUs to an automobile manufacturer in the United States and elsewhere at collusive and noncompetitive prices;

(g)      accepting payment for ECUs sold to an automobile manufacturer in the United States and elsewhere at collusive and noncompetitive prices;

(h)      engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

(i)      employing measures to keep their conduct secret, including but not limited to using code names and meeting at private residences or remote locations.

135.    According to the criminal Information filed against it, Defendant DENSO Corporation and its co-conspirators carried out the HCP conspiracy by:

(a)      participating in meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations to be submitted to an automobile manufacturer in the United States and elsewhere;

REDACTED

       (b)      agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to an automobile manufacturer in the United States and elsewhere;

       (c)      agreeing, during those meetings, conversations, and communications, to allocate the supply of HCPs sold to an automobile manufacturer in the United States and elsewhere on a model-by-model basis;

       (d)      agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by an automobile manufacturer in the United States and elsewhere;

       (e)      submitting bids, price quotations, and price adjustments to an automobile manufacturer in the United States and elsewhere in accordance with the agreements reached;

       (f)      selling HCPs to an automobile manufacturer in the United States and elsewhere at collusive and noncompetitive prices

       (g)      accepting payment for HCPs sold to an automobile manufacturer in the United States and elsewhere at collusive and noncompetitive prices;

       (h)      engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

       (i)      employing measures to keep their conduct secret, including but not limited to using code names and meeting at private residences or remote locations.

    136.    On February 15, 2013, Scott Hammond, the deputy assistant attorney general in the antitrust division, discussed DOJ's ongoing automotive parts investigation in a Thomson Reuters article. He said "[t]he investigation is broader than what we've announced so far . . . .

46

REDACTED

[The investigation] is still very much ongoing, but it already appears to be the biggest criminal antitrust investigation that we've ever encountered. ***I say biggest with respect to the impact on U.S. businesses and consumers, and the number of companies and executives that are subject to the investigation*.**" (emphasis added).

137.   On September 26, 2013, the DOJ announced that Defendant Mitsuba Corporation agreed to pay a $135 million criminal fine and to plead guilty to a two-count criminal information charging it with: (i) participating in a combination and conspiracy to suppress and eliminate competition in automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, certain automotive parts sold to automobile manufacturers, including Honda Motor Company Ltd., Fuji Heavy Industries Ltd., Nissan Motor Company Ltd., Toyota Motor Corporation, Chrysler Group, LLC, and certain of their subsidiaries in the United States and elsewhere, from at least as early as January 2000 through at least February 2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1; and (ii) altering, destroying, mutilating, concealing, covering up, falsifying and making false entries in documents and tangible objects with the intent to impede, obstruct, and influence the investigation of the conduct charged in the other count, and in relation to and contemplation of such investigation, in violation of 18 U.S.C. § 1519.  For purposes of Mitsuba's plea agreement, "automotive parts" are defined to include, among other automotive parts, windshield wiper systems.

138.   According to the Information filed, Defendant Mitsuba Corporation and its co-conspirators carried out the Windshield Wiper Systems conspiracy by:

REDACTED

(a)     participating in meetings, conversations, and communications in the United States and elsewhere to discuss the bids and price quotations to be submitted to automobile manufacturers[3] in the United States and elsewhere;

(b)     agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

(c)     agreeing, during those meetings, conversations, and communications, to allocate the supply of certain automotive parts, including Windshield Wiper Systems, sold to automobile manufacturers in the United States and elsewhere;

(d)     agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by automobile manufacturers in the United States and elsewhere;

(e)     submitting bids, price quotations, and price adjustments to automobile manufacturers in the United States and elsewhere in accordance with the agreements reached;

(f)     selling certain automotive parts, including Windshield Wiper Systems, to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices; and

(g)     accepting payment for certain automotive parts, including Windshield Wiper Systems, sold to automobile manufacturers in the United State and elsewhere at collusive and noncompetitive prices;

---

[3] For purposes of the Mitsuba Information, the term "automobile manufacturers" means Honda Motor Company Ltd., Fuji Heavy Industries Ltd., Nissan Motor Company Ltd., Toyota Motor Corp. and Chrysler Group, LLC, and certain of their subsidiaries, affiliates, suppliers and others.

REDACTED

(h)     engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

(i)     employing measures to keep their conduct secret, including, but not limited to, using code names and meeting at remote locations.

139.    With respect to the obstruction of justice count, the Mitsuba Information charged as follows:

> In or about February 2010, Executive A, acting on Defendant's behalf, knowingly altered, destroyed, mutilated, concealed, covered up, falsified and made false entries in records, documents and tangible objects with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, to wit, an investigation by the FBI and the United States Department of Justice of possible violations of U.S. antitrust law, in relation to and contemplation of such matter and case, and furthermore did order and command other employees of the Defendant to do so, in violation of 18 U.S.C. § 1519.
>
> After becoming aware of the FBI search of Defendant's co-conspirator's U.S. offices, Executive A informed certain of his subordinates employed at the U.S. subsidiary of Defendant about the FBI search, and instructed such subordinates, as well as other employees of Defendant, to locate, conceal and destroy documents and electronic files that were likely to contain evidence of antitrust crimes in the United States and elsewhere.
>
> Executive A concealed and destroyed documents and electronic files in his possession, custody and control in the Eastern District of Michigan that were likely to contain evidence of antitrust crimes in the United States and elsewhere. Certain of Executive A's subordinates and other employees of Defendant took acts in the Eastern District of Michigan and elsewhere to endeavor to conceal and destroy such documents and electronic files in the possession, custody and control of Defendant, and did conceal and destroy such documents and electronic files.

140.    On December 22, 2013, news sources reported that South Korea's Fair Trade Commission ("KFTC") fined Defendants DENSO Korea Electronics Corporation, Denso Korea

REDACTED

Automotive Corporation, and Bosch Electrical Drives Co., Ltd. for conspiring to fix the prices of Windshield Wiper Systems sold to Hyundai Motor Co. and affiliate Kia Motors Corp. between August 2008 and February 2009.  Affected vehicles include the Hyundai Sonata (LF) and Elantra (MD) as well as the Kia Pride (UB) and Carnival (YP).  In total, the KTFC issued a fine 114.608 of billion won (approximately $107.99 million USD) for price-fixing violations relating to Windshield Wiper Systems and IPCs.[4]

## C.    Additional Criminal Pleadings in the Automotive Parts Industry

141.    On September 29, 2011, the DOJ announced that Furukawa Electric Co. Ltd. had agreed to plead guilty and to pay a $200 million criminal fine for its role in a criminal price-fixing and bid rigging conspiracy involving the sale of automotive wire harnesses and related products to automobile manufacturers.

142.    In the press release announcing the fine against Furukawa Electric Co. Ltd., Sharis A. Pozen, then the Acting Assistant Attorney General in charge of the DOJ's Antitrust Division, said that "[a]s a result of this international price-fixing and bid-rigging conspiracy, automobile manufacturers paid noncompetitive and higher prices for parts in cars sold to U.S. consumers."  Ms. Pozen also stated that "[t]his cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped."  The press release also quoted the FBI's Special Agent in Charge Andrew G. Arena, who said that "[w]hen companies partner to control and price fix bids or contracts, it undermines the foundation of the

_____

[4] The fine also encompassed participation by Denso Corporation, Denso Korea Electronics Corporation, and Continental Automotive Electronics LLC in a conspiracy to price-fix instrument panel clusters.

REDACTED

United States' economic system," and that "[t]he FBI is committed to aggressively pursuing any company involved in antitrust crimes."

143.    On January 30, 2012, the DOJ announced that Yazaki Corporation had agreed to plead guilty and to pay a $470 million criminal fine and DENSO Corporation, as stated above, had agreed to plead guilty and to pay a $78 million criminal fine for their respective involvement in multiple price-fixing and bid-rigging conspiracies in the sale of automotive parts to automobile manufacturers in the United States.  According to the three-count criminal Information filed against Yazaki, it engaged in three separate conspiracies: (i) to rig bids for and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to certain automobile manufactures in the United States and elsewhere; (ii) to rig bids for and to fix, stabilize, and maintain the prices of, instrument panel clusters sold to certain automobile manufactures in the United States and elsewhere; and (iii) to fix, stabilize, and maintain the prices of fuel senders sold to an automobile manufacture in the United States and elsewhere.  According to the two-count felony charge against Defendant DENSO Corporation, it engaged in conspiracies to rig bids for, and to fix, stabilize, and maintain the prices of, ECUs and HCPs sold to an automobile manufacturer in the United States and elsewhere.

144.    In the press release announcing the fines against Yazaki Corporation, its executives, and DENSO Corporation, Ms. Pozen vowed to continue the investigation into "pernicious cartel conduct that results in higher prices to American consumers . . . ."  In the same press release, Special Agent in Charge Andrew G. Arena said that "[t]his criminal activity has a significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been occurring for at least a decade.  The conduct has also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold[.]"

REDACTED

145.    On April 3, 2012, the DOJ announced that G.S. Electech Inc. had agreed to plead guilty and to pay a $2.75 million criminal fine for its role in a conspiracy to fix the prices of speed sensor wire assemblies used on antilock brake systems sold to an automobile manufacturer in the United States and elsewhere.

146.    On April 23, 2012, the DOJ announced that Fujikura Ltd. had agreed to plead guilty and to pay a $20 million criminal fine for its role in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to an automobile manufacturer in the United States and elsewhere.

147.    On June 6, 2012, the DOJ announced that Autoliv Inc. had agreed to plead guilty to a two-count criminal Information and to pay a $14.5 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by (i) agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, certain seatbelts sold to a Japanese automobile manufacturer; and (ii) agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, certain seatbelts, airbags, and/or steering wheels sold to a Japanese automobile manufacturer.

148.    On July 30, 2012, the DOJ announced that TRW Deutschland Holding GmbH had agreed to plead guilty and to pay a $5.1 million criminal fine for its involvement in a combination and conspiracy, through its employees, including high level employees of its wholly-owned subsidiaries, to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of seatbelts, airbags and steering wheels sold to two German automobile manufacturers in the United States and elsewhere.

REDACTED

149.     On August 28, 2012, the DOJ announced that Nippon Seiki Co. Ltd. had agreed to plead guilty and to pay a $1 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, instrument panel clusters sold to an automobile manufacturer in in the United States and elsewhere.

150.     On October 30, 2012, the DOJ announced that Tokai Rika Co. Ltd. agreed to plead guilty and to pay a $17.7 million criminal fine for its involvement in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of, HCPs sold to Toyota Motor Corporation and Toyota Motor Engineering & Manufacturing North America, Inc. in the United States and elsewhere.  Tokai Rika also agreed to plead guilty to a charge of obstruction of justice related to the investigation of the antitrust violation.

151.     On February 15, 2013, Scott Hammond, the deputy Assistant Attorney General in the Antitrust Division, discussed the DOJ's ongoing automotive parts investigation in a Thomas Reuters article.  He said "[t]he investigation is broader than what we've announced so far . . . . [The investigation] is still very much ongoing, but it already appears to be the biggest criminal antitrust investigation that we've ever encountered.  I say the biggest with respect to the impact on U.S. businesses and consumers, and the number of companies and executives that are subject to the investigation." (emphasis added).

152.     On July 16, 2013, the DOJ announced that Diamond Electric Mfg. Co. Ltd. had agreed to plead guilty and to pay a $19 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, ignition coils sold to automobile manufacturers in the United States and elsewhere.

REDACTED

153.     In the press release announcing the fine against Diamond Electric Mfg. Co. Ltd., Robert D. Foley III, Agent in Charge, FBI Detroit Division said "[t]hose who engage in price fixing, bid rigging and other fraudulent schemes harm the automotive industry by driving up costs for vehicle makers and buyers."

154.     On July 18, 2013, Panasonic Corporation agreed to plead guilty and to pay a $45.8 million criminal fine for its role in a conspiracy to fix prices of various automotive parts including high intensity discharge ("HID") ballasts, switches and steering angle sensors installed in automobiles sold in the United States and elsewhere.

155.     On September 26, 2013, nine additional Japanese automotive suppliers agreed to plead guilty to conspiracy charges and pay more than $740 million in criminal fines for their roles in rigging the prices of more than 30 different products:

(a)     Hitachi Automotive Systems Ltd. agreed to plead guilty and to pay a $195 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of automotive parts including starter motors, alternators, air flow meters, valve timing control devices, fuel injection systems, electronic throttle bodies, ignition coils, inverters and motor generators sold to automobile manufacturers in the United States and elsewhere;

(b)     Defendant Mitsuba Corporation agreed to plead guilty and to pay a $135 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of certain automotive parts sold to automobile manufacturers in the United States and elsewhere.  For purposes of Mitsuba's plea agreement, "automotive parts" are defined to include, among other automotive parts, windshield wiper systems.  Mitsuba also agreed to plead guilty to one count

of obstruction of justice because of the company's efforts to destroy evidence ordered by a high-level U.S.-based executive after learning of the U.S. investigation of collusion in the automotive parts industry;

(c)     Mitsubishi Electric Corporation agreed to plead guilty and to pay a $190 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of certain automotive parts sold to automobile manufacturers in the United States and elsewhere;

(d)     Mitsubishi Heavy Industries Ltd. agreed to plead guilty and to pay a $14.5 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of compressors and condensers sold to automobile manufacturers in the United States and elsewhere;

(e)     T.RAD Co. Ltd. agreed to plead guilty and to pay a $13.75 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of radiators and automatic transmission fluid warmers ("ATF warmers") sold to Toyota Motor Corporation in the United States and elsewhere;

(f)     Valeo Japan Co. Ltd. agreed to plead guilty and to pay a $13.6 million criminal fine for its participation in a conspiracy to allocate the supply of, rig bids for, and to fix, stabilize and maintain the prices of air conditioning systems sold to automobile manufacturers in the United States and elsewhere;

(g)     JTEKT Corp. agreed to plead guilty and to pay a $103.27 million criminal fine for its participation in a conspiracy to allocate markets, to rig bids for, and to

REDACTED

fix, stabilize and maintain the prices of bearings and electric powered steering assemblies sold to automobile manufacturers in the United States and elsewhere;

(h)     NSK Ltd. agreed to plead guilty and to pay a $68.2 million criminal fine for its participation in a conspiracy to allocate markets, to rig bids for, and to fix, stabilize and maintain the prices of bearings sold to an automobile manufacturer in the United States and elsewhere; and

(i)     Yamashita Rubber Co. Ltd. agreed to plead guilty and to pay an $11 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, raise and maintain the prices of automotive anti-vibration rubber products sold in the United States and elsewhere to automobile manufacturers.

156.    On the same day, September 26, 2013, United States Attorney General Eric Holder in the Antitrust Division presented the DOJ's most recent findings in the ongoing automotive parts investigation.  He stated "[t]hese international price-fixing conspiracies affected more than $5 billion in automobile parts sold to U.S. car manufacturers.  In total, more than 25 million cars purchased by American consumers were affected by the illegal conduct."  Holder also described how the conspiracies worked:  "[c]ompany executives met face to face in the United States and Japan – and talked on the phone – to reach collusive agreements to rig bids, fix prices and allocate the supply of auto parts sold to U.S. car companies.  In order to keep their illegal conduct secret, they used code names and met in remote locations.  Then they followed up with each other regularly to make sure the collusive agreements were being adhered to."  Attorney General Holder explained that the automotive parts conspiracies "targeted U.S. manufacturing, U.S. businesses and U.S. consumers.  As a result of these conspiracies, Americans paid more for their cars."

REDACTED

157.    The diagram below, which was prepared by the DOJ, illustrates the September 26, 2013 guilty pleas and the corresponding automotive parts to which the various manufacturers have admitted price-fixing.



158.    On October 9, 2013, Takata Corp. announced that it had agreed to pay $71.3 million to settle antitrust charges brought by the United States federal prosecutors for its part in a conspiracy to price-fix seatbelts.

159.    On November 26, 2013, the DOJ announced that Toyo Tire & Rubber Co. Ltd. had agreed to plead guilty and to pay a $120 million criminal fine for its role in two separate conspiracies.  Toyo Tire & Rubber Co. Ltd. engaged in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, raise, and maintain the prices of, automotive anti-vibration rubber products sold to Toyota Motor Corporation, Nissan Motor Corporation, Fuji Heavy Industries, Ltd., and certain of their

REDACTED

subsidiaries, affiliates and suppliers in the United States and elsewhere, and by agreeing to allocate sales of, and to fix, raise, and maintain the prices of, automotive constant-velocity-joint boot products sold to GKN plc and its subsidiaries in the United States and elsewhere.

160.    On November 27, 2013, the DOJ announced that Stanley Electric Co. Ltd. had agreed to plead guilty and to pay a $1.44 million criminal fine for its participation in a conspiracy to fix prices of automotive HID lamp ballasts installed in automobiles sold in the United States and elsewhere.

161.    On January 16, 2014, the DOJ announced that Koito Manufacturing Co. Ltd. had agreed to plead guilty and to pay a $56.6 million criminal fine for its roles in separate price-fixing conspiracies involving automobile lighting fixtures and automotive HID lamp ballasts installed in cars sold in the United States and elsewhere.

162.    On February 3, 2014, the DOJ announced that Aisan Industry Co. Ltd. had agreed to plead guilty and to pay a $6.86 million criminal fine for its role in a price-fixing conspiracy involving electronic throttle bodies sold to an automobile manufacturer in the United States and elsewhere.

163.    On February 13, 2014, the DOJ announced that Bridgestone Corporation had agreed to plead guilty and to pay a $425 million criminal fine for its role in a conspiracy to fix prices of automotive anti-vibration rubber parts installed in automobiles sold in the United States and elsewhere.

164.    On April 23, 2014, the DOJ announced that Showa Corporation agreed to plead guilty and to pay a $19.9 million criminal fine for its role in a conspiracy to fix prices and rig bids for pinion-assist type electric powered steering assemblies installed in cars sold in the United States and elsewhere.

REDACTED

165.     On August 19, 2014, the DOJ announced that NGK Sparkplug Co. Ltd. agreed to plead guilty and to pay a $52.1 million criminal fine for its role in a conspiracy to fix prices and rig bids for spark plugs, standard oxygen sensors, and air fuel ratio sensors installed in cars sold to automobile manufacturers in the United States and elsewhere.

166.     On September 29, 2014, the DOJ announced that Toyoda Gosei Co. Ltd. agreed to plead guilty and to pay a $26 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of certain automotive hoses sold to Toyota in the United States and by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of, automotive airbags and steering wheels sold to Subaru and Toyota in the United States and elsewhere.

167.     On October 31, 2014, the DOJ announced that Hitachi Metals Ltd. agreed to plead guilty and to pay a $1.25 million criminal fine for its role in a conspiracy to allocate the sales of, to rig bids for, and to fix, raise, and maintain the prices of automotive brake hose sold to Toyota in the United States and elsewhere.

168.     On November 13, 2014, the DOJ announced that Aisin Seiki Co. Ltd. agreed to plead guilty and to pay a $35.8 million criminal fine for its role in a conspiracy to allocate customers of variable valve timing devices installed in cars sold to automobile manufacturers in the United States and elsewhere.

169.     On November 24, 2014, the DOJ announced that Continental Automotive Electronics LLC and Continental Automotive Korea Ltd. agreed to plead guilty and to pay a criminal fine of $4 million for their roles in a conspiracy to rig bids of instrument panel clusters installed in vehicles manufactured and sold in the United States.

REDACTED

170.   To date, thirty-two companies and forty-eight executives have been charged in the DOJ's ongoing investigation into price-fixing and bid-rigging in the automotive parts industry. Each of the thirty-two companies has either pleaded guilty or agreed to plead guilty and altogether, they have agreed to pay approximately $2.4 billion in criminal fines.

171.   "This criminal activity has a significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been occurring at least a decade. The conduct had also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold," said FBI's Special Agent in Charge Andrew G. Arena. "When companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system," Arena also said. "The FBI is committed to aggressively pursuing any company involved in antitrust crimes."

**D.   Illustrative Examples of Defendants' Conspiratorial Conduct**

172.   Illustrative examples of Defendants' conspiratorial conduct in the market for Windshield Wiper Systems include, but are not limited to, the following:

173.   

REDACTED



174.

175.

176.

REDACTED

177.

**E.      Damage to Plaintiffs and Other Automobile Dealers Caused by Defendants'**

**Illegal Activities.**

178.    Defendants' conspiracy resulted in Defendants charging inflated prices to firms who directly purchased Windshield Wiper Systems from them and in those purchasers raising their prices to subsequent purchasers.

179.    Having paid higher prices for components of the cars they sold to Plaintiffs and the Classes and the Windshield Wiper Systems they sold to Plaintiffs and the Classes, firms who sold such Windshield Wiper Systems and vehicles passed Defendants' overcharges on to Plaintiffs and the Classes.

180.    Automobile dealers were substantially injured by higher prices paid for Windshield Wiper Systems and vehicles.

REDACTED

181. Plaintiffs have standing and have suffered damage compensable by indirect purchaser laws and they and members of the classes they seek to represent have sustained significant damage and injury as a result of Defendants' conspiracy.

## CLASS ACTION ALLEGATIONS

152. Plaintiffs[5] bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All automobile dealers that during the Class Period, (a) indirectly purchased Windshield Wiper Systems manufactured or sold by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased vehicles containing Windshield Wiper Systems manufactured by the Defendants or any current or former subsidiary, affiliate thereof or co-conspirator.

153. Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the unjust enrichment, antitrust, unfair competition, and consumer protection laws of the states whose laws are set forth in the Second and Third Claims below, (except California as to unjust enrichment claims), as well as the unjust enrichment laws of Missouri, Massachusetts and Illinois. The states whose laws are set forth in the Second and Third Claims below, as well as Missouri, Massachusetts, and Illinois, are collectively referred to as the "Indirect Purchaser States." (the "Indirect Purchaser States"). These claims are brought by Plaintiffs on behalf of themselves and persons and entities in the Indirect Purchaser States listed in the Second, Third and Fourth Claims as follows (the "Damages Class"):

> All automobile dealers, in the Indirect Purchaser States, that, during the Class Period (a) indirectly purchased Windshield Wiper Systems manufactured or sold by one of the Defendants or any current or former subsidiary or affiliate thereof, or any co-conspirator or (b) purchased vehicles containing Windshield Wiper

---

[5] Plaintiff Dale Martens is not included in the Nationwide Class.

REDACTED

Systems manufactured by one of the Defendants or any current or former subsidiary, affiliate or co-conspirator thereof.

154.    The Nationwide Class and the Damages Class are referred to herein as the "Classes."  Excluded from the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities, and instrumentalities of the federal government, states, and their subdivisions, agencies, and instrumentalities.

155.    Although Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are at least thousands of members in each Class.

156.    Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole.  Such questions of law and fact common to the Classes include, but are not limited to:

(a)    Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Windshield Wiper Systems sold in the United States;

(b)    The identity of the participants of the alleged conspiracy;

(c)    The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)    Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)    Whether the alleged conspiracy violated state antitrust and unfair competition law, and/or state consumer protection law, as alleged in the Second and Third Claims for Relief;

(f)    Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

(g)    Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

REDACTED

    (h)    The effect of the alleged conspiracy on the prices of Windshield Wiper Systems and vehicles sold in the United States during the Class Period;

    (i)    Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiffs and the members of the Classes;

    (j)    The appropriate injunctive and related equitable relief for the Nationwide Class; and

    (k)    The appropriate class-wide measure of damages for the Damages Class.

157.    Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct because they paid artificially inflated prices for Windshield Wiper Systems purchased indirectly from Defendants or their co-conspirators.

158.    Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

159.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

160.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism provide injured entities with a method for obtaining redress for claims that might not

REDACTED

be practicable to pursue individually and substantially outweigh any difficulties that may arise in the management of this class action.

161.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

162.    Defendants' price-fixing conspiracy had the following effects, among others:

(a)    Price competition has been restrained or eliminated with respect to Windshield Wiper Systems;

(b)    The prices of Windshield Wiper Systems have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c)    Defendants charged purchasers of their Windshield Wiper Systems inflated, fixed and stabilized prices for such Windshield Wiper Systems;

(d)    Having paid higher prices for components of the cars they sold to Plaintiffs and the Classes and the Windshield Wiper Systems they sold to Plaintiffs and the Classes, firms who sold Defendants' Windshield Wiper Systems and vehicles to Plaintiffs and the Classes passed Defendants' overcharges on to them;

(e)    Defendants' overcharges passed through each level of distribution as they traveled to Plaintiffs and the Classes; and

(f)    Automobile dealers purchasing Windshield Wiper Systems and vehicles containing Windshield Wiper Systems have been deprived of free and open competition.

163.    During the Class Period, Plaintiffs and the members of the Classes paid supracompetitive prices for Windshield Wiper Systems.

66

REDACTED

164.    An increase in the prices of Windshield Wiper Systems caused an increase in the price of vehicles during the Class Period.

165.    The market for Windshield Wiper Systems and the market for cars are inextricably linked and intertwined because the market for Windshield Wiper Systems exists to serve the vehicle market. Without the vehicles, the Windshield Wiper Systems have little to no value because they have no independent utility and must be inserted into vehicles to serve any function.  Indeed, the demand for vehicles creates the demand for Windshield Wiper Systems.

166.    Windshield Wiper Systems are identifiable, discrete physical products that remain essentially unchanged when incorporated into a vehicle and are not altered during the manufacturing process.  As a result, Windshield Wiper Systems follow a traceable physical chain of distribution from the Defendants to Plaintiffs and the members of the Classes, and any costs attributable to Windshield Wiper Systems can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

167.    Just as Windshield Wiper Systems can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of Windshield Wiper Systems affect prices paid by indirect purchasers of new motor vehicles containing Windshield Wiper Systems.

168.    Windshield Wiper Systems have their own part numbers, which permit them to be tracked.

169.    Windshield Wiper Systems are pieces of equipment that are necessary to operate a vehicle.

170.    Windshield Wiper Systems are found in every vehicle and can be removed from a finished vehicle and replaced.

REDACTED

171.    The Windshield Wiper Systems subject to Defendants' conspiracy and at issue in this lawsuit only have one use: to be inserted into vehicles.  Whether Windshield Wiper Systems are sold by themselves or in vehicles, their purpose is to be inserted into vehicles.

172.    The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to raise, fix, rig, or stabilize the price of Windshield Wiper Systems and, as a direct and foreseeable result, the price of new motor vehicles containing Windshield Wiper Systems and the price of Windshield Wiper Systems purchased for repair purposes.  Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously.  That analysis—called regression analysis—is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product or service that is an assemblage of costs.  Thus, it is possible to isolate and identify only the impact of an increase in the price of Windshield Wiper Systems on prices for new motor vehicles even though such products contain a number of other components whose prices may be changing over time.  A regression model can explain how variation in the price of Windshield Wiper Systems affects changes in the price of new motor vehicles.  In such models, the price of Windshield Wiper Systems would be treated as an independent or explanatory variable.  The model can isolate how changes in the price of Windshield Wiper Systems impact the price of new motor vehicles containing Windshield Wiper Systems while controlling for the impact of other price-determining factors.

173.    The precise amount of the overcharge impacting the prices of new motor vehicles containing Windshield Wiper Systems can be measured and quantified.  Commonly used and

REDACTED

well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiffs and members of the Classes can be quantified.

174.    By reason of the alleged violations of the antitrust laws, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Windshield Wiper Systems than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent and Plaintiffs' and Class members' damages are measureable.

## PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A.    The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not And Could Not Discover The Claims.

175.    Plaintiffs repeat and reallege the allegations set forth above.

176.    Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until the public announcement on November 22, 2012, of the JFTC Cease and Desist orders regarding Windshield Wiper Systems. Plaintiffs and members of the Classes did not have knowledge of American Mitsuba entities' participation in the alleged conspiracy until September 26, 2013, the date that the DOJ publicly announced Defendant's anticipated guilty plea. Plaintiffs did not have knowledge of Bosch's participation in the alleged conspiracy until December 23, 2013, the date news sources reported that Defendant Bosch Electrical Drives Co., Ltd. had been fined by the KFTC for conspiring to price-fix windshield wipers. ████████

████████████████████████████████████████████████████

REDACTED

████████████████████████████████████████████████████████

177.    Plaintiffs and the members of the Classes are automobile dealers who purchased automobiles or purchased Windshield Wiper Systems to replace or repair damaged or defective Windshield Wiper Systems.

178.    They had no direct contact or interaction with any of the Defendants in this case and had no means from which they could have discovered the combination and conspiracy described in this Complaint until the public announcement on November 22, 2012, of the Cease and Desist orders regarding Windshield Wiper Systems, or the participation of American Mitsuba entities' before September 26, 2013, or the participation of Bosch before December 23, 2013.████████████████████████████████████

179.    Prior to the public announcements of the JFTC orders regarding Windshield Wiper Systems on November 22, 2012, sufficient information was not available in the public domain to the Plaintiffs and the members of the Classes to suggest that any one of the Defendants was involved in a criminal conspiracy to price-fix and rig bids for Windshield Wiper Systems. Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or other direct purchasers, much less the fact that they had engaged in the Windshield Wiper combination and conspiracy alleged herein.

180.    For these reasons, the statute of limitations as to Plaintiffs' and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

**B.      Fraudulent Concealment Tolled the Statute of Limitations.**

REDACTED

181.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes.  Plaintiffs and the members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until the public announcement on November 22, 2012, of the JFTC Cease and Desist orders regarding Windshield Wiper Systems. Plaintiffs and Class members could not have discovered American Mitsuba entities' participation before September 26, 2013, or Bosch's participation before December 23, 2013. ███████████████████████████

182.    Because Defendants' agreements, understandings, and conspiracies were kept secret until November 22, 2012, Plaintiffs and members of the Classes before that time were unaware of Defendants' unlawful conduct, and they did not know before then that they were paying supracompetitive prices for Windshield Wiper Systems throughout the United States during the Class Period.

183.    The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

184.    By its very nature, Defendants' anticompetitive conspiracy was inherently self-concealing.  Windshield Wiper Systems are not exempt from antitrust regulation, and thus, before November 22, 2012, Plaintiffs reasonably considered it to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' Windshield Wiper prices before November 22, 2012, and a reasonable person would not have been alerted to file claims against American Mitsuba

REDACTED

entities before September 26, 2013, or against Bosch before December 23, 2013 ███████

███████████████████

185.    Plaintiffs and the members of the Classes could not have discovered the alleged

contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence

because of the deceptive practices and techniques of secrecy employed by the Defendants and

their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination,

or conspiracy.

186.    Because the alleged conspiracy was both self-concealing and affirmatively

concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no

knowledge of the alleged conspiracy, or that a Windshield Wiper conspiracy existed, until

November 22, 2012, when the cease and desist orders concerning Windshield Wiper Systems

were publicly disseminated by the JFTC. Plaintiffs and members of the Classes had no

knowledge of American Mitsuba entities' participation before September 26, 2013, or Bosch's

participation before December 23, 2013, ██████████████████████

██ Before those dates, no facts or information would have caused a reasonably diligent person

to investigate whether American Mitsuba entities, Bosch and certain Denso entities had

participated in the conspiracy alleged herein.

187.    As a result of Defendants' fraudulent concealment of their conspiracy, the running

of any statute of limitations has been tolled with respect to any claims that Plaintiffs and the

members of the Classes have alleged in this Complaint.

## FIRST CLAIM FOR RELIEF

**Violation of Section 1 of the Sherman Act**
**(on behalf of Plaintiffs and the Nationwide Class)**

REDACTED

188.    Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

189.    The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

190.    At least as early as January 2000, and continuing until at least the filing of this Complaint, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Windshield Wiper Systems, thereby creating anticompetitive effects.

191.    The anticompetitive acts were intentionally directed at the United States market for Windshield Wiper Systems and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Windshield Wiper Systems throughout the United States.

192.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for Windshield Wiper Systems.

193.    As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Windshield Wiper Systems have been harmed by being forced to pay inflated, supracompetitive prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

194.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, Defendants and their co-conspirators did those things that they combined and

REDACTED

conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

195.   Defendants' conspiracy had the following effects, among others:

(a)   Price competition in the market for Windshield Wiper Systems has been restrained, suppressed, and/or eliminated in the United States;

(b)   Prices for Windshield Wiper Systems sold by Defendants and their coconspirators have been fixed, raised, maintained, and stabilized at artificially high, noncompetitive levels throughout the United States;

(c)   Prices for vehicles purchased by Plaintiffs and the members of the Nationwide Class containing Windshield Wiper Systems manufactured by Defendants and their co-conspirators were inflated; and

(d)   Plaintiffs and members of the Nationwide Class who purchased Windshield Wiper Systems or indirectly from Defendants or their coconspirators have been deprived of the benefits of free and open competition.

196.   Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems than they would have paid and will pay in the absence of the conspiracy.

197.   Plaintiffs and members of the Nationwide Class will continue to be subject to Defendants' price-fixing, bid-rigging, and market allocations, which will deprive Plaintiffs and members of the Nationwide Class of the benefits of free competition, including competitively-priced Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

REDACTED

198.     Plaintiffs and members of the Nationwide Class will continue to lose funds due to overpayment for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems because they are required to purchase vehicles and Windshield Wiper Systems to continue to operate their businesses.

199.     The alleged contract, combination, or conspiracy is a per se violation of the federal antitrust laws.

200.     Plaintiffs and members of the Nationwide Class will be at the mercy of Defendants' unlawful conduct until the Court orders an injunction.

201.     Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants preventing and restraining the violations alleged herein.

### SECOND CLAIM FOR RELIEF

**Violation of State Antitrust Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

202.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

203.     From as early as January 2000 until at least the filing of this Complaint, Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Windshield Wiper Systems in unreasonable restraint of trade and commerce and in violation of the various state antitrust statutes set forth below.

204.     The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize and/or maintain artificially supracompetitive prices for Windshield Wiper Systems, to rig bids for the sale of Windshield Wiper Systems and to allocate customers for Windshield Wiper Systems in the United States.

205.     In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

REDACTED

(a)    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Windshield Wiper Systems at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Windshield Wiper Systems sold in the United States;

(b)    allocating customers and markets for Windshield Wiper Systems in the United States in furtherance of their agreements; and

(c)    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

206.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, decrease, or stabilize prices and to allocate customers with respect to Windshield Wiper Systems.

207.    Defendants' anticompetitive acts described above were knowing, willful, and constitute violations or flagrant violations of the following state antitrust statutes.

208.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, et seq.

(a)    Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

REDACTED

(b)     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

209.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, et seq.

(a)     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720 of the California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Windshield Wiper Systems at supracompetitive levels.

(b)     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Windshield Wiper Systems.

(c)     For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and

REDACTED

the following: (1) Fixing, raising, stabilizing, and pegging the price of Windshield Wiper

Systems; and (2) Allocating among themselves the production of Windshield Wiper Systems.

(d)     The combination and conspiracy alleged herein has had, *inter alia*, the following

effects upon the commerce of California: (1) Price competition in the sale of Windshield Wiper

Systems has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices

for Windshield Wiper Systems sold by Defendants and their co-conspirators have been fixed,

raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California

and throughout the United States; and (3) Those who purchased Windshield Wiper Systems or

vehicles containing Windshield Wiper Systems manufactured by Defendants and their co-

conspirators have been deprived of the benefit of free and open competition.

(e)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

members of the Damages Class have been injured in their business and property in that they paid

more for Windshield Wiper Systems than they otherwise would have paid in the absence of

Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the

California Business and Professions Code, Plaintiffs and members of the Damages Class seek

treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section

16750(a) of the California Business and Professions Code.

210.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the District of Columbia Official Code §§ 28-4501, et seq.

(a)     Defendants' combinations or conspiracies had the following effects: (1)

Windshield Wiper Systems price competition was restrained, suppressed, and eliminated

throughout the District of Columbia; (2) Windshield Wiper Systems prices were raised, fixed,

maintained, and stabilized at artificially high levels throughout the District of Columbia; (3)

REDACTED

Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or purchased Windshield Wiper Systems or vehicles in the District of Columbia, were deprived of free and open competition, including in the District of Columbia; and (4) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or purchased Windshield Wiper Systems or vehicles in the District of Columbia, paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems, including in the District of Columbia.

(b)     During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

211.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Hawaii Revised Statutes Annotated §§ 480-1, et seq.

(a)     Defendants' unlawful conduct had the following effects: (1) Windshield Wiper Systems' price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Windshield Wiper Systems' prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid

79

REDACTED

supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-4, *et seq.*

212.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, et seq.

(a)     Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

REDACTED

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Illinois Compiled Statutes 10/1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under 740 Illinois Compiled Statutes 10/1, *et seq.*

213.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, et seq.

(a)     Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

REDACTED

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

214.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, et seq.

(b)      Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(c)      During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(d)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(e)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

215.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, et seq.

REDACTED

(a)     Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Maine; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition: and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10. §§ 1101, *et seq.*

216.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, et seq.

(a)     Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

REDACTED

the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

217.      Defendants have entered into an unlawful agreement in unreasonable restraint of trade in violation of the Minnesota Statutes Annotated §§ 325D.49, et seq.

(a)      Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(b)      During the Class Period Defendants' illegal conduct substantially affected Minnesota commerce.

REDACTED

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

218.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, et seq.

(a)     Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class, including those who resided in Mississippi and/or purchased Windshield Wiper Systems or vehicles in Mississippi were deprived of free and open competition, including in Mississippi: and (4) Plaintiffs and members of the Damages Class, including those who resided in Mississippi and/or purchased Windshield Wiper Systems or vehicles in Mississippi paid supracompetitive, artificially inflated prices for Windshield Wiper Systems, including in Mississippi.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

REDACTED

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

219.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, et seq.

(a)     Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

REDACTED

220.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, et seq.

(a)     Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased Windshield Wiper Systems or vehicles in Nevada, were deprived of free and open competition including in Nevada; and (4) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased Windshield Wiper Systems or vehicles in Nevada, paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems, including in Nevada.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.060, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

221.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, et seq.

87

REDACTED

(a)     Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(b)     During the Class Period Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

222.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, et seq.

(a)     Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members

REDACTED

of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(b)       During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)       As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)       By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann.§§ 57-1-1, *et seq.*

223.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, et seq.

(a)       Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased Windshield Wiper Systems or vehicles in New York, were deprived of free and open competition, including in New York; and (4) Plaintiffs and members of the Damages Class, including those who resided in New York, paid supracompetitive, artificially inflated prices for Windshield Wiper Systems when they purchased, including in New York, Windshield Wiper Systems or vehicles containing Windshield Wiper Systems, or purchased, including in New York, Windshield Wiper Systems or

REDACTED

vehicles that were otherwise of lower quality, than would have been absent the conspirators'

illegal acts, or were unable to purchase Windshield Wiper Systems or vehicles that they would

have otherwise have purchased absent the illegal conduct.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New

York commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

members of the Damages Class have been injured in their business and property and are

threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint

of trade in violation of the New York Donnelly Act, §§ 340, *et seq.* The conduct set forth above

is a per se violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek

all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

224.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the North Carolina General Statutes §§ 75-1, et seq.

(a)     Defendants' combinations or conspiracies had the following effects: (1)

Windshield Wiper Systems price competition was restrained, suppressed, and eliminated

throughout North Carolina; (2) Windshield Wiper Systems prices were raised, fixed, maintained,

and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of

the Damages Class, including those who resided in North Carolina and/or purchased Windshield

Wiper Systems or vehicles in North Carolina, were deprived of free and open competition,

including in North Carolina; and (4) Plaintiffs and members of the Damages Class, including

those who resided in North Carolina and/or purchased Windshield Wiper Systems or vehicles in

REDACTED

North Carolina, paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles including in North Carolina.

(b)      During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(c)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et seq.*

225.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, et seq.

(a)      Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

91

REDACTED

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

226.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, et seq.

(a)     Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(b)     During the Class Period Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiffs and

REDACTED

members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

227.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1., et seq.

(a)    Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class, including those who resided in South Dakota and/or purchased Windshield Wiper Systems or vehicles in South Dakota, were deprived of free and open competition including in South Dakota; and (4) Plaintiffs and members of the Damages Class, including those who resided in South Dakota and/or purchased vehicles or Windshield Wiper Systems in South Dakota, paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems including in South Dakota.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

REDACTED

228.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, et seq.

(a)    Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class, including those who resided in Tennessee and/or purchased Windshield Wiper Systems or vehicles in Tennessee, were deprived of free and open competition including in Tennessee; and (4) Plaintiffs and members of the Damages Class, including those who resided in Tennessee, and/or purchased Windshield Wiper Systems or vehicles in Tennessee, paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems including in Tennessee.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(c)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

229.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, et seq.

REDACTED

(a)        Defendants' combinations or conspiracies had the following effects: (1)
Windshield Wiper Systems price competition was restrained, suppressed, and eliminated
throughout Utah; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and
stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages
Class were deprived of free and open competition; and (4) Plaintiffs and members of the
Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems
and vehicles containing Windshield Wiper Systems.

(b)        During the Class Period, Defendants' illegal conduct had a substantial effect on
Utah commerce.

(c)        As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and
members of the Damages Class have been injured in their business and property and are
threatened with further injury.

(d)        By reason of the foregoing, Defendants have entered into agreements in restraint
of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.* Accordingly, Plaintiffs and
members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-
911, *et seq.*

230.    Defendants have entered into an unlawful agreement in restraint of trade in
violation of the 9 Vermont Stat. Ann. §§ 2451, et seq.

(a)        Defendants' combinations or conspiracies had the following effects: (1)
Windshield Wiper Systems price competition was restrained, suppressed, and eliminated
throughout Vermont; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and
stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the
Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

REDACTED

the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(b)      During the Class Period Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 9 Vermont Stat. Ann. §§ 2451, *et seq.* Plaintiffs are entitled to relief pursuant to 9 Vermont Stat. Ann. § 2465 and any other applicable authority.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under 9 Vermont Stat. Ann. §§ 2451, *et seq.*

231.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, et seq.

(a)      Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased Windshield Wiper Systems or vehicles in West Virginia, were deprived of free and open competition including in West Virginia; and (4) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased vehicles or Windshield Wiper Systems in

96

REDACTED

West Virginia, paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems including in West Virginia.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia §§ 47-18-1, *et seq.*

232.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, et seq.

(a)     Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(b)     During the Class Period Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

REDACTED

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

233.    Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy, and agreement. Plaintiffs and members of the Damages Class have paid more for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

234.    In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

235.    Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

## THIRD CLAIM FOR RELIEF

**Violation of State Consumer Protection Statutes
on behalf of Plaintiffs and the Damages Class**

REDACTED

236.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

237.     Defendants knowingly engaged in unlawful, unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

238.     Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101.

(a)     Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Windshield Wiper Systems were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c)     Defendants' unlawful conduct had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

REDACTED

(d)     During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

239.     Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, et seq.

(a)     During the Class Period, Defendants marketed, sold, or distributed Windshield Wiper Systems in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)     During the Class Period, Defendants' illegal conduct substantially affected California commerce and consumers.

(c)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(d)     The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants, as alleged herein,

REDACTED

constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.,* including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.,* of the California Business and Professions Code, set forth above;

(e)      Defendants' acts, omissions, misrepresentations, practices, and nondisclosures, as described above, whether or not in violation of Section 16720, *et seq.,* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(f)      Defendants' acts or practices are unfair to purchasers of Windshield Wiper Systems (or vehicles containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(g)      Defendants' unlawful conduct had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout California; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout California; (3) Plaintiffs and members of the Damages Class, including those who resided in California and/ or purchased Windshield Wiper Systems or vehicles in California, were deprived of free and open competition, including in California; and (4) Plaintiffs and members of the Damages Class, including those who resided in California and/or purchased Windshield Wiper Systems or vehicles in California, paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems, including in California.

REDACTED

(h)     Defendants' acts and practices are unlawful, fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(i)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(j)     The unlawful, fraudulent, deceptive, and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supracompetitive and artificially-inflated prices for Windshield Wiper Systems (or vehicles containing them). Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

240.     Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et seq.

(a)     Defendants' unlawful conduct had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Florida; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class,

REDACTED

including those who resided in Florida and/or purchased Windshield Wiper Systems or vehicles in Florida  were deprived of free and open competition, including in Florida; (4) Plaintiffs and members of the Damages Class including those who resided in Florida and/or purchased Windshield Wiper Systems or vehicles in Florida paid supracompetitive, artificially inflated prices for Windshield Wiper Systems, including in Florida.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      Defendants have engaged in unfair competition or unlawful, unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.,* and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

241.      Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, et seq.

(a)      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Windshield Wiper Systems were sold, distributed, or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)      Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by

REDACTED

Defendants for Windshield Wiper Systems.  Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price.  Moreover, Plaintiffs lacked any meaningful choice in purchasing Windshield Wiper Systems because they were unaware of the unlawful overcharge and because they had to purchase Windshield Wiper Systems in order to be able to operate their vehicles.  Defendants' conduct with regard to sales of Windshield Wiper Systems, including their illegal conspiracy to secretly fix the price of Windshield Wiper Systems at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs.

(c)     The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A.§ 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Windshield Wiper Systems as set forth in N.M.S.A. § 57-12-2E, due to the inflated prices paid by Plaintiffs and Class members for vehicles and Windshield Wiper Systems.

(d)     Defendants' unlawful conduct had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

REDACTED

(e)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(f)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(g)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.,* and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

242.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, et seq.

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Windshield Wiper Systems were sold, distributed, or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     Defendants deceptively led purchasers, such as Plaintiffs and Class members, to believe that the Windshield Wiper Systems they had purchased as replacements and inside vehicles had been sold at legal competitive prices, when they had in fact been sold at collusively obtained inflated prices, that were passed on to them.

(c)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in injuries to purchasers and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

REDACTED

(d)     Because of Defendants' unlawful trade practices in the State of New York, New York purchasers who indirectly purchased Windshield Wiper Systems were misled to believe that they were paying a fair price for Windshield Wiper Systems or the price increases for Windshield Wiper Systems were for valid business reasons; and similarly situated purchasers were potentially affected by Defendants' conspiracy.

(e)     Defendants' unlawful conduct had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased Windshield Wiper Systems or vehicles in New York, were deprived of free and open competition, including in New York; and (4) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased Windshield Wiper Systems or vehicles in New York , paid supracompetitive, artificially inflated prices for Windshield Wiper Systems, including in New York.

(f)     Defendants knew that their unlawful trade practices with respect to pricing Windshield Wiper Systems would have an impact on all purchasers in New York and not just the Defendants' direct customers.

(g)     Defendants knew that their unlawful trade practices with respect to pricing Windshield Wiper Systems would have a broad impact, causing class members who indirectly purchased Windshield Wiper Systems to be injured by paying more for Windshield Wiper Systems than they would have paid in the absence of Defendants' unlawful trade acts and practices.

REDACTED

(h)     During the Class Period, Defendants marketed, sold, or distributed Windshield

Wiper Systems in New York and their illegal conduct substantially affected New York

commerce and New York purchasers.

(i)     During the Class Period, each of the Defendants named herein, directly, or

indirectly and through affiliates they dominated and controlled manufactured, sold, and/or

distributed Windshield Wiper Systems in New York.

(j)     Plaintiffs and members of the Damages Class seek all relief available pursuant to

N.Y. Gen. Bus. Law § 349(h).

243.     Defendants have engaged in unfair competition or unfair, unconscionable, or

deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, et seq.

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by

affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the

prices at which Windshield Wiper Systems were sold, distributed, or obtained in North Carolina

and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The conduct of the Defendants described herein constitutes consumer-oriented

deceptive acts or practices within the meaning of North Carolina law, which resulted in injuries

to purchasers of Windshield Wiper Systems and vehicles, and broad adverse impact on the

public at large, and harmed the public interest of North Carolina purchasers in an honest

marketplace in which economic activity is conducted in a competitive manner.

(c)     Defendants' unlawful conduct had the following effects upon purchasers of

Windshield Wiper Systems in North Carolina: (1) Windshield Wiper Systems price competition

was restrained, suppressed, and eliminated throughout North Carolina; (2) Windshield Wiper

Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout

REDACTED

North Carolina; (3) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Windshield Wiper Systems or vehicles in North Carolina, were deprived of free and open competition including in North Carolina; and (4) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Windshield Wiper Systems or vehicles in North Carolina, paid supracompetitive, artificially inflated prices for Windshield Wiper Systems, including in North Carolina.

(d)     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and purchasers of Windshield Wiper Systems and vehicles.

(e)     Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts.  Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy.  Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware.

(f)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, marketed, sold and/or distributed Windshield Wiper Systems in North Carolina.

(g)     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

REDACTED

244.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, et seq.

(a)    Defendants' combinations or conspiracies had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.,* and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

245.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, et seq.

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial

REDACTED

and non-competitive levels, the prices at which Windshield Wiper Systems were sold, distributed, or obtained in Vermont.

(b)     Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Windshield Wiper Systems.  Defendants owed a duty to disclose such facts, and Defendants breached that duty by their silence.  Defendants misrepresented to all purchasers during the Class Period that Defendants' Windshield Wiper Systems prices were competitive and fair.

(c)     Defendants' unlawful conduct had the following effects: (1) Windshield Wiper Systems price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Windshield Wiper Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Windshield Wiper Systems and vehicles containing Windshield Wiper Systems.

(d)     As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(e)     Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Windshield Wiper Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Windshield Wiper Systems at prices set by a free and fair market.  Defendants' misleading conduct and

REDACTED

unconscionable activities constitute unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment
### on behalf of Plaintiffs and the Damages Class

246.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

247.    Plaintiffs bring this claim under the laws of all states listed in the Second and Third Claims, supra., except California. Plaintiffs also bring this claim under the laws of Missouri, Massachusetts, and Illinois on behalf of the Plaintiffs who have their primary places of business in those three states and the class members in those three states.

248.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Windshield Wiper Systems.

249.    Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs or the members of the Damages Class for Windshield Wiper Systems.

250.    Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

REDACTED

251.    Pursuit of any remedies against the firms from whom Plaintiffs and the Class members purchased vehicles containing Windshield Wiper Systems and Windshield Wiper Systems subject to Defendants' conspiracy would have been futile, given that those firms did not take part in Defendants' conspiracy.

**PRAYER FOR RELIEF**

Accordingly, Plaintiffs respectfully request that:

A.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

B.    The unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)    An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)    A *per se* violation of Section 1 of the Sherman Act;

(c)    An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)    Acts of unjust enrichment by Defendants as set forth herein.

C.    Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

REDACTED

D.      Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

E.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F.      Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

G.      Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

H.      Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

I.      Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated:  December 22, 2014.

REDACTED

 

Respectfully submitted,

s/ *Gerard V. Mantese*
_____
Gerard V. Mantese
(Michigan Bar No. P34424)
David Hansma
(Michigan Bar No. P71056)
Brendan Frey
(Michigan Bar No. P70893)
Mantese Honigman Rossman and
Williamson, P.C.
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com

Don Barrett
David McMullan
Brian Herrington
Barrett Law Group, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
Yifei Li
Cuneo Gilbert & LaDuca, LLP
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

Shawn M. Raiter
Larson • King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
sraiter@larsonking.com
psand@larsonking.com

Michael J. Flannery
Cuneo Gilbert & LaDuca, LLP
300 North Tucker
Suite 801
St. Louis, MO 63101
Telephone: (314) 226-1015
mflannery@cuneolaw.com

Phillip Duncan
Richard Quintus
Duncan Firm, P.A.

Thomas P. Thrash
Thrash Law Firm, P.A.
1101 Garland Street

REDACTED

900 S. Shackleford, Suite 725
Little Rock, AR 72211
Telephone:  (501) 228-7600
phillip@duncanfirm.com
richard@duncanfirm.com

Dewitt Lovelace
Valerie Nettles
Lovelace & Associates, P.A.
Suite 200
12870 US Hwy 98 West
Miramar Beach, FL  32550
Telephone: (850) 837-6020
dml@lovelacelaw.com
alex@lovelacelaw.com

Gregory Johnson
G. Johnson Law, PLLC
6688 145th Street West,
Apple Valley, MN 55124
Telephone: (952) 930-2485
greg@gjohnsonlegal.com

Little Rock, AR 72201
Telephone: (501) 374-1058
tomthrash@sbcglobal.net

Charles Barrett
Charles Barrett, P.C.
6518 Highway 100
Suite 210
Nashville, Tennessee 37205
Telephone: (615) 515-3393
charles@cfbfirm.com

*Attorneys for Dealership Plaintiffs*

REDACTED

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2014 I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send electronic notices of same to all counsel of record.

                    __/s/ Brendan Frey_____
                    Brendan Frey (Michigan Bar No. P70893)
                    Mantese Honigman Rossman
                     and Williamson, P.C.
                    1361 E. Big Beaver Road
                    Troy, Michigan 48083
                    Phone: (248) 457-9200 ext. 203
                    Fax: (248) 457-9201
                    Email: bfrey@manteselaw.com